Case No. 17-5248. Jorge L. Medina, appellant v. Jefferson B. Sessions, III Mr. Gura for the appellant, Mr. Nimrod for the appellate Good afternoon. Your Honors, may it please the Court, Alan Gura for the appellant, Jorge L. Medina. To understand why Section 922G1 cannot be applied to Mr. Medina, we have to first understand why it can apply to most everyone else. By understanding the statute's plainly legitimate sweep, we can see the spaces where as-applied challenges are left to be available. We start with Congress's reason for enacting Section 922G1. As the Supreme And in Schrader, this Court described the public safety concerns that underlay this interest in terms such as crime prevention, the prevention of future armed violence. Again, none of this is particularly usually legitimate. Is there a subset with which there might be a disagreement, that is the City of Congress, and it's plain from your brief that you know this, that could it be dangerousness or could it be the reason for depriving certain persons of their right under the Second Amendment? Yes. The government does posit a theory in its brief which is that the touchstone is not dangerousness but what they consider virtuousness or the lack of virtue. There is no historical basis to suggest that lack of virtue was something that was understood traditionally as a basis for disarming people. More to the point, if virtue is what one You do find language in the Supreme Court language that refers to this, the Second Amendment rights as belonging to law-abiding persons or law-abiding people. That's right. Law-abiding responsible people is the language that Peller used, law-abiding responsible citizens. And when we talk about Doesn't that sound more like the virtuousness? That is not the same as virtuousness. For example, we know that people who suffer from mental illness are not necessarily going to be responsible people, but we would never say that they lack virtue because they suffer from that disability. Likewise, there might be people who suffer from drug addiction. Well, they're not going to be responsible citizens. That's quibbling over whether we call it virtuousness or call it something else. But there is a question whether the deprivation of Second Amendment rights is turning on dangerousness per se or on lawlessness per se, whether it's called virtuous or something else. I mean, the person who's not mentally responsible can be lawless. Your Honor, there are two parts to the answer. The first part that I would look at is what motivated Congress? What is the reason that Congress had, whether they thought about the Second Amendment or not? What is the statute intended to do? And on this point, the courts are uniform. Everybody, including this Court and Schrader and Bass, the Supreme Court, we understand that it's meant to deal with things like crime prevention, heightened risk of future armed violence, the need to prevent violent violence, a wide variety of violent conduct, much of it quite egregious. These are the reasons that courts have accepted for why the statute exists. Now, when we look at the Second Amendment as to where the line is drawn between people who can have a gun and people who could not have a gun, then we look at cases such as what this Court decided in Wren. In Wren, this Court explained what responsible means. It means that we're talking about people who are no more dangerous with a gun than law-abiding citizens generally are. The discussion in Wren about commonly situated citizens, those who possess common levels of need and pose only common levels of risk. Now, that being the case, your brief speaks in terms of both the nature of your client's lawful life since the entrance of the criminal record. Would you say that that second part is necessary to your case, or is it... What we would say is this, that first of all, notwithstanding some of the descriptions by the government of our brief, there's no facial challenge to 922G1. As a categorical matter, Congress can legislate broadly for a nation of 330 million people. But as courts uphold as a basic feature of our judicial system, there is room for as-applied challenges. And when it comes to as-applied challenges, when a person comes before the Court and says, this generally applicable law should not be applied to me because in my case, it's not constitutional, the question then becomes, what is the fit, what is the constitutional interest? Does the person... Hmm? You're getting out of the question I just asked you. Yes. You're reading it. So the question is, what is the constitutional interest? The constitutional interest is the interest by law-abiding, responsible citizens to defend themselves. And traditionally, it's been understood since the time of the framing. The framers understood the concept of disarming dangerous, risky people. And when people were, although they did not have felon dispossession laws at the time of the framing, that's actually a surprisingly more modern feature, courts will accept and courts have accepted that you don't need a precise analog in the framing era to uphold a modern gun control law, but you do need some evidence of 1791 thinking. There has to be, it has to be something that would have been understood and known to the framers that there's a governmental interest... In this applied, as-applied challenge, is it based on the nature of his offense or on his law-abiding life sentence? You raised both in your brief. Now, are they independently sufficient, or is one of them sufficient only when coupled with the other? It's a holistic analysis of who Mr. Medina is today. The man is before the court asking for his rights to be honored, and so the question becomes, is he a person entitled to the protection of the Second Amendment? So you're not saying that sort of white-collar felony fraud is, can't sustain, consistent with the Second Amendment, a deep disarmament. You're not arguing that. We're making a much narrower argument. That's correct, Your Honor. With respect to him in particular, you're taking into account the number of years that have passed, his record of law-abidingness, the nonviolence of his offense, the fact that, in fact, the sentencing judge didn't believe that it was sufficiently serious even to sentence him to a term in prison, so that's the kind of analysis that you're looking at. That's correct, Your Honor. Now, the nature of the crime is a factor. Obviously, a person has a severe, perhaps nearly impossible, road to travel in this kind of a case, whereas somebody who has felony jaywalking or some of the other examples given by other courts, stealing a lollipop, a book from a library, those are going to be easier to overcome. I hear you, and I read in your brief that you're focusing on dangerousness, and both you and the government highlight the minority report of the Pennsylvania Ratifying Convention, which described, propounded by individuals whose views, I gather, were minority at the time of the framing of the Constitution, but were persuasive in the adoption of the Second Amendment, and the quote that everybody picks up on is, no law shall be passed for disarming the people or any of them unless for crimes committed or real danger of public injury from individuals. And I was a little bit surprised at your reliance on it, because it has the disjunctive, the danger on the one prong, and then the other prong is for crimes committed. And there is also in Heller discussion of, not of danger, but of law-abidingness, responsibility of the felon disenfranchisement. So how can we think about the role of law-abidingness in the history and in the precedence, if you will just bear with me and accept the notion that maybe the constitutionally permissible disarmament is not limited to people who pose a danger? Well, law-abiding, first of all, that passage, Your Honor, from the Pennsylvania minority was also relied upon in Bindrup to support our position. In that case, of course, sustained two as-applied challenges by people who the court determined were not either unvirtuous or dangerous. I think that what everybody tends to agree on, and even we would agree with this, is that to the extent that law-abiding is a factor, whether someone is violating the law or not, it can be a loose proxy of sorts for dangerousness. People who have a disrespect for the law, people who are scofflaws and who have disdain for the rules of society probably are not trustworthy with firearms. Everything goes back to dangerousness. Or responsibility, non-trustworthiness, judgment, adherence to the social compact. I mean, I hear you pushing back toward dangerousness and saying all these other things are proxies for or concerned with. What makes you so confident that that's the only disabling condition given what we see in the precedent and in the history that is concerned with this separate law-abidingness idea? Well, first of all, we start with the precedent of this Court, most recently in Wren, where dangerousness was a touchstone of who had the right and who did not. Wren is law here, and the Court made numerous statements that talked about those who are no more prone to misuse access to firearms, for example. That's on pages 665 and 66. So dangerousness is the law, and everything goes back to whether or not a person's access to firearms will cause harm. Well, Wren also says that the Supreme Court in Heller taught us, quote, that legal regulations of possession or carrying that are longstanding, including bans on possession by felons or bans on carrying near sensitive sites, reflect limits of the amendment. Yes. So they're saying that it's taken out of Second Amendment coverage altogether. No, Your Honor. The problem with going to that extreme is that if Congress can define anything that's a felony is, therefore, an exclusion from a fundamental constitutional right, then Congress at that point has the power to define the scope of a fundamental right, which is, of course, not possible otherwise. But it does. I mean, that's assuming a level of kind of capriciousness and bad faith on the part of Congress. A felony is a serious crime, and if you had reason to believe that Congress was expanding the definition of felony to things that were trivial because they were trying to disarm the people, you might have, you know, claimed due process, disproportionality, what have you. But it's a pretty stable and overdetermined category of what the legislature thinks is serious. So it doesn't seem as open to manipulation as you argue. Well, Your Honor, I would respectfully disagree that it's a stable category that's only in the framing area, for example, felonies were few and very well defined. The traditional common law felonies, murder, arson, rape, burglary, those kinds of things. Today, of course, a felony, as our brief mentioned, could be something as simple as a man releasing helium balloons as an appreciation to his girlfriend on Valentine's Day. I mean, he was charged with a felony initially. That was a case of, perhaps, excessive overcharging. But albeit the same, what we come down to when a person comes before the court and says this law cannot be applied to me because I have a right which is being infringed and there's no governmental interest that justifies the infringing of my right, the courts have to ask, okay, what is the governmental interest? I'm not quite certain yet whether you're saying that it can't be applied to him because he had a non-violent, non-dangerous felony or because he's had a law abiding life since then. The latter, Your Honor. And what is the ground that you're going on saying? Your Honor, it is a holistic analysis of whether or not this person fits the definition that Heller gave of people who are entitled to exercise Second Amendment rights. Now, whatever criminal record Mr. Medina has or may have goes to that question. It's part of the analysis. And if we were to have discovery, if we were to have a process and the government were to turn up all kinds of information about Mr. Medina that showed that he is, in fact, irresponsible and dangerous and maybe he's done other things that we don't know about, then Mr. Medina would lose. But the question here is, can he access the courts to at least make that claim? And I would submit to you that there's nothing magical or mystical about Section 922G1. It's an act of Congress. It's constitutional on its face, but people should have the right, as with any act, to say, as applied to me, given the interest that Congress has, given the constitutional justification for disarming me or not, there's not enough here. And as applied to me, I need relief. And that's... What do you make, Mr. Gura, of the opinion of Justice Easterbrook writing for the en banc Seventh Circuit when he says in, is it Squeam? He responds to the lifetime disability argument by saying, you know, the avenues to deal with that are through pardon or expungement or restoration of civil rights, that your client who, you know, may in fact be able to make his case as a model citizen should seek a pardon. Well, Your Honor, while he should have access to seek a pardon, that's not the exclusive way to vindicate rights. People can come before a court and file declaratory judgment under our legal system and say, I am, I have a constitutional injuring fact, the government is enforcing a law against me, it's not constitutional, and get a judge who thinks about the constitutional issue to decide the case rather than a lawyer in a pardon office somewhere who's thinking about a very different range of interests to go into evaluating whether or not to issue these, what the court in Bindrup called moonshots, in one of the opinions. The Seventh Circuit, of course, also would later say that we should be able to have, as applied challenges. In Williams, the court said, Heller referred to felon disarmament bans only as presumptively lawful, which by implication means that there must exist the possibility the ban could be unconstitutional in the face of an as applied challenge. Now, that is not an unusual decision. It's no different than what this court said in Schrader, where this court said that the federal firearms ban will remain vulnerable to a properly raised as applied constitutional challenge brought by an individual who, despite a prior conviction, has become a law-abiding responsible citizen entitled, and I'm going to come back to that word entitled, to use arms in defense of hearth and home. Now, what Schrader tells us with this formulation, which is consistent with the formulations in the Seventh Circuit, the First, the Eighth, the Ninth Circuit, the Third Circuit, of course, on Bakkepin and Bindrup approved of as applied challenges, this court's usage of the word entitled, I think, is telling, because it tells us that this is a one-step holistic approach. If a person is dangerous, irresponsible, poses some risk that takes him or her outside of the Second Amendment, then the claim loses at step one. However, if at traditional step one the person is a law-abiding responsible citizen, then there cannot be a step two because the government has no interest. There's no tailoring that's possible that would allow the government to disarm that person because at step one we've proven that there's no interest. I'm curious, Mr. Gura, in the cases that suggest that there is a right to a case-by-case as applied challenge and also in the Third Circuit which found merit in the challenge, am I right that all of those cases were in the situation of a state law misdemeanor? Are there any cases that have, and I'm just curious why this is, but it seemed to me that there's no cases where it's a federal felony conviction and the court said case-by-case, let's look at this person after the passage of, in your client's case, decades and peaceable life and no further offenses. Three aspects to that question. First of all. Am I just right as a factual matter? And then I'd like to hear your further explanation. But is there any case that has said let's do an as-applied analysis of an individual who was someone convicted of a federal felony? Of a felony? Federal. Of a federal felony. Or even a state felony for that matter. I believe there might be two, and if I could supplement this. The ones I'm thinking of, I think the Britt case out of North Carolina, which was a North Carolina State Supreme Court decision applying their constitutions. A right to arms provision. I believe Mr. Britt was convicted of some felony drug offenses early in his past. I believe we cite that case somewhere. I don't think that was a misdemeanor case. And I think there was a more recent case out of a district court. I would submit a letter on that. I don't have it on me. It was a very recent decision. Hasn't Congress itself exempted a whole category of felonies from the effect of this act? That's right. Well, Congress actually does not use the term felony in this law anywhere else. And I'm speaking in terms of 921A28 that the term crime punishable by imprisonment, which is the term Congress uses for a term exceeding one year, does not include any federal or state offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices. Has Congress itself taken a whole category of felonies out of the effectiveness of this act? That's correct, Your Honor, and that's a good point. There is actually by statute a category of exclusion, which I believe is being litigated right now. There's a case in a district court. It's not one of my cases. One of my colleagues has it. So you might be seeing that come your way soon enough. But to go back to Judge Pillard's question, number one, it's still very early in the Second Amendment game. We've only had these cases now start to come up. Second, to the extent that we're not talking about, of course, the felonies that Judge Santel mentioned, you're talking about state-level misdemeanors punishable by over a year. The government takes the same position as it does in felony cases. They haven't fought any less hard in Bindurup or in any of these other cases to try to get to ensure that the analysis is the same and is just as restrictive. Why don't we hear from the government, and we'll give you some time. Fantastic. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court, Patrick Nemeroff on behalf of the government. Plaintiff is prohibited from possessing firearms because he was convicted of a federal felony punishable by 30 years in prison. In Heller, the Supreme Court emphasized that nothing in its opinion cast doubt on long-standing prohibitions on the possession of firearms by felons. It identified the Second Amendment right as belonging to the law-abiding and responsible, and it described this prohibition as falling within an exception to the right. Now applying Heller, no federal court of appeals has held Section 922G1 unconstitutional as applied to an individual convicted of a felony, much less a federal felony subject to 30 years' imprisonment, and no court has adopted the sort of standardless, holistic, individualized approach that plaintiff asked this court to adopt here. To the contrary, several courts, for example, most recently the Fourth Circuit, while leaving the issue open in prior decisions, when actually confronted with the question, have rejected the approach. And so in Hamilton v. Pelosi, the Fourth Circuit held that an individual convicted of a felony offense permanently forfeits their Second Amendment right, and they're not entitled to an individualized inquiry to determine whether they're dangerous in the future. That's not a prerequisite for the statute's application. And indeed, such an approach would pose all kinds of problems, as underscored by Congress' experience with Section 925C applications for relief from Section 922G1. There, Congress defunded the program after finding that despite ATF agents spending 40 million years annually to go out and investigate in the field these sorts of applications, it was still making mistakes and restoring firearms to people who went on to misuse them. So if ATF can do it, despite those field investigations, there's no doubt that courts are not going to be able to do it at the appropriate level of accuracy. And it's simply not required. The historic understanding underpinning this is that firearms rights have historically been subject to categorical disarmament of individuals deemed outside of the virtuous citizenry, and felons have historically forfeited certain rights permanently. Is that because of dangerousness, or is that because of lack of virtuousness, or is it both? It's the fact that they're no longer considered law-abiding citizens, that they fall outside the virtuous citizenry. And so it's certainly not the case that a felon who has been disenfranchised can come into court and say, you know, please evaluate my individual circumstances now such that I should be entitled to regain that right. And just in the same way, once someone has been convicted of a felony and they remain a felon, then they are outside of the scope of the Second Amendment. I'm a little confused about how, if we held that some Second Amendment scrutiny applied here, we would conduct an intermediate scrutiny analysis, which your brief sort of hints at. But if we're looking at the individual as applied, it just seems like that's – I don't see how that matches up with an intermediate scrutiny analysis, the very nature of which is to say, you know, that there doesn't have to be an exact fit between the class of regulated conduct and or persons and the government's objective. So if we get to the second step, and this Court has adopted intermediate scrutiny at the second step in dealing with challenges to Section 922G1, then it is not consistent with intermediate scrutiny to look at the individual because that would convert intermediate scrutiny to a narrow tailoring requirement. And the Supreme Court has said as much in Edge Broadcasting Company in a case dealing with the First Amendment. So where intermediate scrutiny properly applies, and it properly applies – this Court has held that it applies here because we're dealing with individuals who are outside of the core of the Second Amendment. Are you talking about Schrader, or what are you talking about? Yes, Schrader, Your Honor. Once you're applying intermediate scrutiny, then it would be inconsistent with that scrutiny to look at the individual in the way that Plan F is asking you to do here. But of course the Court shouldn't even get to the second step because historically felons have fallen outside of the Second Amendment. And, you know, even if this Court were to determine that an individual – an individual who were not dangerous, that would not erase his felon status. He would remain a felon. And I think Judge Sutton's concurrence in Tyler v. Hillsdale says this pretty clearly. And he talks about how the prohibition appropriately applies to felons and you're a felon unless and until your crime is pardoned or expunged. So you're – and it seems like both sides here are taking the sort of on-off switch position. Either you're in the Second Amendment and in the core, so Medina wins, or out of the Second Amendment, no means and scrutiny. Medina loses permanently no matter what an angel he becomes. I mean, this Court in Schrader definitely adopted the two-step approach. So if this Court holds that Plaintiff here is entitled to some Second Amendment protection despite the historical understanding of the right, then under this Court's controlling precedent, it should proceed to the second step. All right. Just for the record, state the two steps, please. Sorry? Just for the record, state the two steps, please. State the two steps. The first step is, is the individual – does the law implicate the Second Amendment? So here is an individual convicted of a federal felony entitled to Second Amendment protection. The second step is, even if the individual is entitled to some protection, does the statute – does the application of the statute survive means and scrutiny? And what this Court held in Schrader was – All right. State what that scrutiny is, please. This Court adopted intermediate scrutiny. So the government has to, you know – What I'm trying to get you to do is say for the record what you mean by intermediate scrutiny. Right. So the law has to be appropriately tailored to a compelling interest. It doesn't have to be narrowly tailored, but it has to serve the interest. And what the Court held in Schrader, of course, was that the law satisfies intermediate scrutiny. You said a compelling interest. An important interest, Your Honor. But there's no doubt that the government has a sufficiently important interest here, and indeed this Court upheld the statute as applied to common law, misdemeanants, and Schrader. So that conclusion, of course, also follows for felons. The real question, then, that plaintiff is presenting here is whether he's entitled to an individualized determination of his own dangerousness. At this point, it would seem to me that we are looking, in part at least, at whether it's appropriately tailored. I don't think you get off too far. Try to get us to get off at the first step. That depends on us saying that he's not entitled to the protection of the Second Amendment, right? You're right. The first step depends on – You're saying that we should stop at the first step because you're saying he's not entitled to the protection of the Second Amendment. That's right. That strikes me as rather circuitous reasoning. He's not entitled because he's not entitled is not the most convincing rationale I ever heard. I don't think it's – If we get that far, then, to the second step, is this appropriately tailored? Yes, Your Honor, and to answer both parts of your question, Congress didn't pick an arbitrary category here. It chose felons, and felons – No, it didn't say felons. Sorry? Congress never said felony in this act. That's true, Your Honor, but the definition – It didn't pick felony. It picked the crime punishable by a certain sentence. Which tracks the common law definition of felony, and for individuals convicted of misdemeanors, it actually made the crime – it required the crime to be punishable by more than two years, and, of course, here we're dealing with someone convicted of a federal felony, so that's not – non-arbitrary, if that's a word, or if they're not being arbitrary. Can you explain that antitrust exemption from the definition? I can, and just before I get into it, I just want to say none of this is in the briefing because this argument – Nobody talked about – to my surprise, nobody talked about the antitrust exemption at all. Sure, but I think it's – what's useful to do is to go back to look at the legislative history for why the antitrust exemption was included in the first place, and the reasons don't track for the crime here or felonies more generally. So if you look back, the relevant report is SREP number 89-1866. It's from 1966. It's at page 77. And what's explained there is that at the time that the Gun Control Act was enacted, antitrust, which was traditionally always treated civilly, was not made a felony crime under federal law. There were a handful of states that had made it a felony crime, but under federal law – At the time I was defending persons charged with it, it was punishable by more than a year in prison, I assure you. At the time that – no, my understanding from reading that Senate report, Your Honor, is that at the time that this provision was enacted, it would not have been punishable by more than a year under federal law. And so what Congress wanted to do was for that specific area, because only a handful of states had made it a felony at that time, provide for uniform treatment. Now that's entirely different when you're dealing here with fraud that has been a federal felony since at least 1948. It certainly has been treated seriously getting back to the founding. It's punishable by 30 years in prison now. So the reasoning underlying that exception does not apply whatsoever in this case, and indeed Planoff hasn't argued that it does. And again, really Planoff's ultimate argument, you know, is that he's entitled to – no matter what crime anyone is convicted of, they're entitled to come into court five years later, ten years later, and say, look, I'm no longer dangerous. The statute should no longer apply to me. But that has no basis in the historical understanding of the right. It's not required by intermediate scrutiny, and it would create all kinds of problems of administrability and that really courts have no reason to engage in. Now, if there are no further questions. Thank you. Thank you. All right. Counsel for Pellitt, give you a couple of minutes. Thank you, Your Honor. When we argued Bindrup and when we argued Schrader, and every time we pointed out that those people were only convicted of misdemeanors, even a common-law misdemeanor, Mr. Nemeroff, I believe it was, or one of his colleagues said, well, who cares? Congress made the category for misdemeanors, felons, they're all the same. This is Congress's judgment as to who's dangerous. And so now, you know, if you have a misdemeanor plaintiff, they say, well, it doesn't matter if he's only a misdemeanor. And if you have a felon plaintiff, well, then suddenly it's really very important as to what the classification is. But the bottom line is that you're talking about the desire by the Congress to disarm people. And if the person is a law-abiding, at the end of the day, law-abiding responsible person who's not dangerous, and there is no interest at all involved in disarming that person, then there is no possible tailoring. It's why Schrader used the word entitled in that second part. That was not a two-step analysis. Schrader had a two-step analysis with respect to the categorical challenge. The first part of Schrader asserted a challenge that said, as a category, people convicted of common-law misdemeanors should be exempt from 922G1 because there isn't any sort of statutory definition of their crime at all. And the court rejected that on a two-step analysis. But then when it came time to the potential of the individualized, holistic, personalized, as-applied challenge, that every American can come to court and argue against the application of any criminal law, then the court said, well, if he's entitled to the protection of the Second Amendment, then the case has to end there. So the question becomes, is this person before the court a law-abiding responsible citizen? And it's not simply for Congress to decree the bounds of a fundamental constitutional right. It requires a court, in the first instance, to analyze the question and make that determination. And that's what Mr. Medina is entitled to, even if it's expensive, even if it's uncertain. Courts make decisions about people every single day in a narrative context. And we're talking here about a fundamental constitutional right. There should be access to the courts to see whether or not the Congress can simply decree that away. Thank you very much, Your Honor. Thank you. We'll take the case under advice.
judges: Rogers, Pillard, Sentelle